WILL OF BRANDON: HOFFMEISTER and others, Appellants, vs. AMBERG, Respondent.

*November 14—December 5, 1916.*

*Limitation of actions: Pleading: Appeal: Review: Questions considered: Wills: Legacies, when payable: Interest: Delay in probating will.*

1. In order that advantage may be taken of the bar of the statute of limitations it must be specially pleaded.
2. Questions not raised in the trial court will not ordinarily be considered on appeal to the supreme court.
3. Where, in place of a provision in a will giving testator's married daughter an equal share with his other daughters in the homestead, a codicil substituted a legacy of $200, to be paid to her by the other heirs "after my death," such legacy was intended to become due and payable one year after testator's death, that being the time generally limited for the payment of debts and legacies.

4. Where, in such case, the other daughters had come into the use and possession of the homestead immediately after testator's death, the married daughter was entitled to interest on her legacy from the time it became due, although by agreement among the heirs the will was not probated until many years after.

5. A will may be admitted to probate at any time after the death of the testator.

APPEAL from a judgment of the circuit court for Vernon county: E. C. HIGBEE, Circuit Judge. *Affirmed.*

The appeal is from a judgment of the circuit court reversing a judgment of the county court.

One Hugh Brandon of Vernon county died November 12, 1889, leaving a will dated February 26, 1886, and a codicil thereto dated July 23, 1887. The said will and codicil were duly admitted to probate in June, 1910. Surviving said Hugh Brandon were his widow, Mary Brandon, who died December 15, 1909, and the following named children: Mary, Anna, since deceased, *Eliza Amberg* (respondent), Agnes, William, and Frank.

By the will there was devised to the son Frank eighty acres of land, and the rest of his real estate, consisting of the homestead, to his wife, Mary, for life, and after her death to his four daughters in equal shares. To the son William was bequeathed the sum of $5, to a grandchild, Pearl, the second best cow, and the rest of his personal property to his three daughters, Mary, Anna, and Agnes. The material changes by the codicil read as follows:

"1st. It is my wish that my homestead consisting of [description], shall be the home of my daughters Mary, Annie, and Agnes and that they have the control of the same, and also that my wife shall make her home upon the same and to receive her support and clothing from the same during her life.

"2d. Instead of my daughter *Eliza,* wife of John Amberg, having an equal share of my homestead (after the death of my wife), I wish that my other heirs shall pay her after my death the sum of two hundred dollars, and that sum to constitute her entire share of my estate."

Shortly after the death of Hugh Brandon the heirs, know-
ing of the contents of the will and codicil, agreed that nothing
should be done with reference to a settlement of the estate
during the lifetime of the widow, but all joined in a quit-
claim deed to Frank of the property devised to him and he
went into possession.

At the time of the settlement of the final account of the
administrator with the will annexed in April, 1911, it ap-
peared that, although the administrator treated the home-
stead as being so much cash in his final account, as a matter
of fact no sale of the homestead was made and no personal
property came into his hands, except that the two surviving
sisters of the three who received the homestead gave him the
sum of $200 to satisfy this bequest to *Eliza Amberg,* the sis-
ters having retained and still retaining the homestead.   On
the application for final settlement a contention was made
by the administrator that the legacy to *Eliza Amberg* could
be discharged by the payment of but the $200, with no al-
lowance for interest thereon.   *Eliza Amberg* duly objected
to such construction and demanded payment of the legacy of
$200 with interest at the legal rate from one year after the
death of testator.   The county court disallowed any claim for
interest on said sum, from which ruling *Eliza Amberg* duly
appealed to the circuit court.

In the circuit court issues were framed upon a complaint
by *Eliza Amberg* setting forth her contentions; and an an-
swer was interposed on behalf of these two surviving sisters,
but no questions raised therein as now suggested, that this
was a personal obligation of the sisters who took the home-
stead or that the statute of limitations applied.

Upon the hearing had it was stipulated, in addition to the
facts above recited, that the widow, together with the three
daughters, took possession of the farm and had the rents, is-
sues, and profits thereof until after the death of the widow
and also had possession of the personal property.

Upon his findings of fact the circuit court directed judg-

ment in effect construing the will so as to charge and burden
the homestead devised to the three daughters with the pay-
ment of the sum of $200 and interest thereon from the period
of one year after the death of the testator, from which judg-
ment an appeal was taken to this court by the two surviving
sisters who took the homestead, and the administrator.

For the appellants there was a brief by *C. J. Smith* and
*E. J. Hammer,* and oral argument by *Mr. Smith.*

For the respondent there was a brief by *J. T. Dithmar* and
*R. P. Clark,* and oral argument by *Mr. Dithmar.*

ESCHWEILER, J.    The substantial question presented on
this appeal is whether this bequest shall draw interest from
the period of one year after the death of the testator, as
claimed by *Mrs. Amberg,* or from the time at which the ad-
ministrator could have been required by law to pay this leg-
acy after the actual probating of the will, as claimed by appel-
lants.

The appellants contend that this is a general legacy and
does not take effect until after the will is probated, and then
cannot be referred back as to the time of the death of the tes-
tator, and that the claimant *Eliza Amberg,* by joining in the
agreement of the heirs to delay the probate of the father's es-
tate until the death of the widow, waived any rights she
might have had for interest during such delay.    And fur-
ther, that this bequest of $200 became the personal obliga-
tion of the sisters taking the homestead and that therefore the
county court had no jurisdiction; and lastly, that if it be-
came such personal obligation the statute of limitations had
run against it.

As to the latter propositions they are disposed of by the
rules that in order to take advantage of the bar of the statute
of limitations such bar must be specially pleaded (*Roach v.
Sanborn L. Co.* 135 Wis. 354, 359, 115 N. W. 1102), and
that questions not brought up in the court below cannot be

entertained here (*Birdsall v. Fraenzel,* 154 Wis. 48, 53, 142 N. W. 274).

When the deceased said in his codicil that he wished his other heirs shall pay to *Eliza Amberg,* "after my death," the sum of $200, it must be construed to mean that the payment was intended by him to become due and payable at such time as is ordinarily the period after death that the law provides for such payment in the ordinary course of administration, namely, one year after such death.

Construing this codicil in the light of the situation disclosed here, namely, that the testator changed the interest of his daughter *Eliza* in the estate from an equal share with the sisters in the homestead to this legacy of $200, and that the sisters had the use and enjoyment of the homestead from immediately after testator's death to the present time, and thereby the use, so to speak, of the $200 remaining unpaid to *Eliza,* there is nothing to indicate an intention by testator to postpone *Eliza's* interest in the estate beyond the time when the sisters took their interest. These appellants taking the homestead fixed their own time for immediate enjoyment by their own acts and ought not now complain of being required to place *Eliza* in as nearly the same position as themselves as is now possible.

The delay in admitting the will to probate is immaterial; it may be admitted at any time after the death of the testator (*Hanley v. Kraftczyk,* 119 Wis. 352, 96 N. W. 820), and the delay is attributable as much to the appellants as to the respondent.

The general rule is that such legacy becomes due and payable at the end of the year following the death of the testator, which is the time generally limited for the payment of debts and legacies. *Evans v. Foster,* 80 Wis. 509, 515, 50 N. W. 410; *Matter of Frankenheimer,* 195 N. Y. 346, 353, 88 N. E. 374; *Kingsbury v. Bazeley,* 75 N. H. 13, 70 Atl. 916.

Such legatee is in the same position as a creditor and en-

titled to be awarded interest at the legal rate for such time as he is kept out of his payment.    *Matter of Rutherfurd,* 196 N. Y. 311, 315, 89 N. E. 820.

Interest does not depend upon demand or default (*Ogden v. Pattee,* 149 Mass. 82, 84, 21 N. E. 227; *Daniels v. Benton,* 180 Mass. 559, 62 N. E. 960) ; and even if the delay is caused by the legatee contesting the will, it does not affect the paying of interest as of one year from the death of the testator. *Claflin v. Holmes,* 202 Mass. 157, 159, 88 N. E. 664.

The appellants cannot now be heard for the first time to challenge the jurisdiction of the county court, and whatever delay there may have been in the probate of the will it was by virtue of the agreement between the heirs and ought not to be taken advantage of by any of the parties to the agreement.    The circuit court was therefore right in its conclusions.

*By the Court.*—Judgment of the circuit court affirmed.